# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLENE LEONARD, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 09-4692 |
| | : | |
| v. | : | |
| | : | |
| BRISTOL TOWNSHIP SCHOOL DISTRICT, | : | |
| JAMES ANDERS, GERRY BARCIK, | : | |
| JAMES WHITE, AND ELLEN BUDMAN, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                                                      July 28, 2010

Currently pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim. In her First Amended Complaint, Plaintiff seeks redress for various claims of employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000, et. seq.) and the Pennsylvania Human Relations Act (43 PA. CONS. STAT § 951, et. seq.). For the reasons discussed below, Defendants' Motion to Dismiss is denied.

## I.    FACTUAL BACKGROUND

Plaintiff Charlene Leonard has worked as a custodian for Defendant Bristol Township School District ("Bristol" or "the School District") since 1996. (Am. Compl. ¶ 16.) Since July 2006, Defendant James Anders served as Plaintiff's immediate supervisor. (Id. ¶ 17.) Plaintiff's "second line supervisor" is Defendant Gerry Barcik, the "Business Manager." (Id. ¶ 17.) The remaining Defendants are high-level supervisors with Bristol Township. Defendant James White

is the Operations, Safety, Environmental, and Training Coordinator, and Defendant Ellen Budman is the Bristol Township Superintendent of Schools. (Id. ¶ 17.)

In her First Amended Complaint, Plaintiff claims that Defendant Anders engaged in a wide range of repeated sex discrimination and harassment that was both "pervasive and severe," which began in the fall of 2006 and ran through January 2008. As Plaintiff specifically alleges, Defendant Anders's conduct, inter alia, consisted of,

> physically touching Plaintiff in an unwelcome manner on her inner thigh, her arm and shoulder while requiring her to ride with him in his truck to and from schools to perform mop duty on a daily basis when she could have driven herself, professing his love for her, speaking intimately to her about the details of his personal life and what he could do for her life, calling her repeatedly while at work and at home to discuss personal matters despite Plaintiff's protests about his non-work related calls, especially to her personal telephone, offering numbers of times to set her up in a furnished apartment to be with him if she would leave her husband, ordering her to do chores for him off the work premises during work hours and requiring her to periodically make breakfast for him, intimidating her physically and psychologically and distracting her from her assigned duties.

(Id. ¶ 18.) During this same period, Plaintiff repeatedly told Anders that she was married and had no interest in a personal or romantic relationship. (Id. ¶ 19.)

In the Spring of 2007, White informed Plaintiff that the School District knew of Anders's conduct towards Plaintiff. (Id. ¶ 20.) White further advised Plaintiff that Anders had acknowledged his inappropriate romantic interest in Plaintiff during a school management meeting, at which Defendants Barcik, Budman, and White were present. (Id. ¶ 20.) Despite their knowledge of the alleged conduct, Defendants Barcik, Budman, and White failed to reasonably investigate or take action regarding the situation. (Id. ¶ 20.)

Through 2006 and 2007, as well as from January 2008 to January 2009, Defendant Anders's alleged sexually discriminatory actions continued, as he would place his body close to

Plaintiff's, watch and stand over Plaintiff without any work purpose, and require her to shop and cook for him and other supervisors. (Id. ¶¶ 25, 28.) In July 2007, as a result of Anders's actions, Plaintiff attempted suicide. (Id. ¶ 26.)

After her suicide attempt, Plaintiff returned to work. On or about September 15, 2008, Anders forced Plaintiff to change her work hours absent good cause and effective the next day. (Id. ¶ 30.) Following the change of her hours, "Anders threatened Plaintiff, through the Union, that she had best not try to file any charges against him." (Id. ¶ 31.)

On November 5, 2008, Plaintiff filed complaints with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC") regarding the aforementioned conduct. (Id. ¶ 33.) Following the filing of Plaintiff's complaints, Defendant Anders "increasingly engag[ed] in physically and psychologically intimidating behavior, such as, approaching Plaintiff closely without speaking, standing still behind her without acknowledging his presence or without having reason to be present." (Id. ¶ 35.) On or about December 2008, Anders had an employee survey Plaintiff's co-workers to determine who would support him over Plaintiff in regards to her EEO claims. (Id. ¶ 37.)

By January 2009, as a direct result of Anders's actions and Barcik, Budman, and White's failure to intervene, Plaintiff left work on a disability leave of absence that was approved by the School District and continued at least up to the time Plaintiff filed the instant Complaint. (Id. ¶ 38.)

## II. PROCEDURAL BACKGROUND

Plaintiff filed her initial Complaint on October 13, 2009. On December 16, 2009, Plaintiff filed her First Amended Complaint, which, as the Court determined in its December 23,

2009 Order, mooted Defendants' Motion to Dismiss of November 30, 2009. Subsequently, Defendants filed a second Motion to Dismiss on February 1, 2010. Plaintiff filed her Response in Opposition on February 17, 2010. Defendants' filed a Reply Memorandum on March 9, 2010, which was followed by Plaintiff's Sur-Reply Brief, filed on March 23, 2010.

### III.     STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a pleading. FED. R. CIV. P. 12(b)(6). The starting point in analyzing a pleading is Rule 8(a), which requires that a pleading, at a minimum, consist of "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Regardless of its exact form, however, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in order to withstand a 12(b)(6) motion to dismiss. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When read in the light most favorable to the plaintiff, a pleading that provides sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" meets the required level of "facial plausibility." Iqbal, 129 S. Ct. at 1949; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (according to the dictates of Iqbal, extending the 12(b)(6) standard of review established in Twombly to all civil pleadings). On the other hand, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Taken together then, in evaluating a pleading's sufficiency in relation to a Rule 12(b)(6) motion to dismiss, a "District Court must accept all of [a pleading's] well-pleaded facts as true" and draw all reasonable inferences therefrom in the light most

favorable to the plaintiff, "but may disregard any legal conclusions[,]" in determining whether the plaintiff has a "'plausible claim for relief.'" Fowler, 578 F.3d at 210-211 (quoting Iqbal, 129 S. Ct. at 1949-50).

## IV. DISCUSSION

Based on the above-described facts, Plaintiff asserts sexual harassment/hostile work environment, sex discrimination, and retaliation claims under both Title VII and the PHRA against Defendant Bristol Township School District. (Am. Compl. Counts I-VI.) Against the remaining individual Defendants, Plaintiff asserts claims of aiding and abetting discrimination under the PHRA. (Am. Compl. Counts VII-X.) In its Rule 12(b)(6) Motion to Dismiss, Defendants raise a statute of limitations defense as to some of the alleged conduct and seek dismissal of Plaintiff's claims on the basis of insufficient pleading. As explained further below, the Court finds that – under a Rule 12(b)(6) standard of review – the instant Complaint pleads a continuing violations claim, and thus withstands a statute of limitations defense pending further discovery or more exacting scrutiny at the summary judgment stage. The Court further, in reading the Complaint in the light most favorable to Plaintiff, concludes that Plaintiff adequately pled a factual basis as to each element of her claims.

### A. Title VII and PHRA Statutes of Limitations[1]

Both Title VII and the PHRA prohibit employers from discriminating against their employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a);

---

[1] "A complaint may properly be dismissed for failure to state a claim on statute of limitations grounds if the untimeliness of the complaint is apparent on its face." Murray v. DiGuglielmo, 363 Fed. Appx. 851 (3d Cir. 2010) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir.1994).

5

43 PA. STAT. ANN. § 955. Courts addressing Title VII and PHRA claims often address both laws in the same analysis, as both share significant overlap. See Johnson v. McGraw-Hill Co., 451 F. Supp. 2d 681, 691 (W.D. Pa. 2006) ("Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts." (citing Kelly v. Drexel Univ., 94 F.3d 102, 104 (3d Cir. 1996)). In regard to the grounds for dismissal presently before the Court, the analysis is identical under either Title VII or the PHRA. Accordingly, the Court engages in one analysis equally applicable to the claims brought under each statute.

"Prior to bringing a claim for judicial relief under Title VII or the PHRA, a plaintiff must exhaust all administrative remedies." Garcia v. Newtown Twp., No. CIV.A.09-3809, 2010 WL 785808, at *11 (E.D. Pa. Mar. 5, 2010). To do so, plaintiffs must file an administrative charge with the relevant administrative agency. A considerable body of caselaw addresses the intricacies of filing administrative charges in Pennsylvania, where both the EEOC and the Pennsylvania Human Rights Commission ("PHRC") provide administrative procedures that must be exhausted prior to bringing respective federal or state claims for employment discrimination. See Yeager v. UPMC Horizon, --- F. Supp. 2d ----, 2010 WL 1024591, at *8-12 (W.D. Pa. Mar. 17, 2010) (analyzing Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997) and discussing statute of limitation implications of the Work-Sharing Agreement between the EEOC and PHRC, which allows for dual-filing of administrative charges with the EEOC and PHRC). For the purposes of the instant Memorandum, however, it is sufficient to note that:

> One, pursuant to the PHRA, a plaintiff must file an administrative charge with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of the alleged act of discrimination. 43 PA. STAT. ANN. § 959(h). Two, pursuant to Title VII, [in Pennsylvania] a plaintiff must file an administrative charge with the EEOC within 300 days of the alleged act of discrimination, or within thirty days

after receiving notice that the state or local agency has terminated the proceedings under state or local law, whichever is earlier. 42 U.S.C. § 2000e-5(e)(1).

Fusco v. Bucks County, No. CIV.A.08-2082, 2009 WL 4911938, at *6 (E.D. Pa. Dec. 18, 2009).

Here, Plaintiff filed an administrative charge with both the EEOC and PHRA on November 5, 2008, and subsequently received two case numbers, one from each respective administrative body. (Am. Compl. ¶ 33, 45.) Thus, the relevant statutory limitations period for Plaintiff's Title VII claim runs back 300 days from November 5, 2008 to January 10, 2008; and for her PHRA claim, from November 5, 2008 to May 9, 2008. See Craig v. Thomas Jefferson Univ., No. CIV.A.08-4165, 2009 WL 2038147, at *3-4, 7 (E.D. Pa. July 7, 2009) (addressing separately the 300-day statute of limitations period for Title VII claim from 180-day period for PHRA claim). The statute of limitations for both Title VII and the PHRA are strictly construed so that, generally, a court may not consider conduct falling outside the designated statute of limitations period. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002) (concluding that Title VII claims of *discrete* discriminatory acts must be filed with the EEOC before the expiration of the statute of limitations period, otherwise such claim will be forfeited); Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (noting that Pennsylvania courts have "strictly interpreted" filing requirements of the PHRA).

Nevertheless, a number of equitable doctrines may apply that, in effect, would extend the relevant statutory period. See Morgan, 536 U.S. at 116-18; West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995) (addressing the continuing violations theory); Oshiver, 38 F.3d 1380, 1385 (addressing the discovery rule and the equitable tolling doctrine). Under one such doctrine – the continuing violations theory – a court may examine a pattern of conduct that

7

extends beyond the statute of limitations period.  See Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 480-81 (3d Cir. 1997); Yeager, ___ F. Supp. 2d ___, 2010 WL 1024591, at *8-12 (citing Rush, 113 F.3d at 481).  While an allegation of a repeated course of conduct shares a "'natural affinity'" with a hostile work environment claim (see Rush, 113 F.3d at 482 (citing West, 45 F.3d at 755)), the continuing violations doctrine also has been held to apply to other employment discrimination claims – indeed, even other areas of the law.  O'Connor v. City of Newark, 440 F.3d 125, 128-29 (3d Cir. 2006) ("We find persuasive the reasoning of our sister circuits that the distinction [ – as the Supreme Court addressed in Morgan, 536 U.S. at 117-118 – ] between 'continuing violations' and 'discrete acts' is not an artifact of Title VII, but is rather a generic feature of federal employment law."); see also Voices for Independence v. Pa. Dept. of Transp., No. CIV.A.06-78, 2007 WL 2905887, at *12 (W.D. Pa. Sept. 28, 2007) (concluding that the Supreme Court's ruling in Morgan did not limit the continuing violation doctrine solely to hostile work environment claims, and is "entirely consistent with, and affirmative of, the law of this circuit as it pertains to the continuing violations doctrine.")

To establish that an "'ongoing practice or pattern of discrimination'" constitutes a continuing violation, a plaintiff must demonstrate that:  "(1) at least one discriminatory act occurred within the filing period; and (2) the harassment was more than isolated, sporadic acts of intentional discrimination."  Fusco, 2009 WL 4911938, at *7 (applying the continuing violations theory test as articulated in Rush, 113 F.3d at 481-82).  In evaluating whether this doctrine applies, the Third Circuit considers – at a minimum –  the three following factors:  "1) subject matter – whether the violations constitute the same type of discrimination . . . ; (2) frequency – whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of

8

permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights . . . ." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001); see also Shenkan v. Potter, 71 Fed. Appx. 893, 895 (3d Cir. 2003) (citing Rush, 113 F.3d at 482).

The Supreme Court, in relation to the hostile work environment claim asserted in Morgan, addressed those "isolated, sporadic acts" or, as the Court referred to them, "discrete discriminatory acts," that cannot be a part of a continuing violation, and as a result, must be filed within the relevant limitations period. 536 U.S. at 113-114. Examples of such discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire . . . ." Id. at 114. Each discrete discriminatory act "constitutes a separate actionable 'unlawful employment practice,'" and must have occurred within the relevant statutory period to be timely filed, even if related to a repeated course of conduct that is not time-barred. Id. at 113.

In the present case, only for the purpose of resolving the Motion to Dismiss, the Court finds that Plaintiff has adequately invoked the continuing violations doctrine. In her Complaint, Plaintiff sets forth a pattern of related conduct that persisted over the course of her employment, as well as into the respective 180 and 300-day statutory limitations periods for the PHRA and Title VII. At the same time, the conduct outside the 180 and 300-day periods never rose to the level of "discrete discriminatory acts," nor could it be characterized as "isolated, sporadic acts." Morgan, 536 U.S. at 110, 113; Rush, 113 F.3d at 481-82. Her supervisor's unwelcome physical touching and other amorous advances; intrusive observation and interference with Plaintiff's professional and personal lives; assignment of degrading, unusual chores; and intimidating behavior evidences a discriminatory practice with the relation, frequency, and permanence to

suffice as a continuing violation. The Court notes that, in reaching this conclusion, it has accepted as true Plaintiff's well-plead facts and drawn reasonable inferences in Plaintiff's favor. Thus, it still remains to be seen whether Plaintiff's claims constitute a continuing violation at a later stage of the case, when the record is further developed.

The Court finds unavailing Defendants' contention that several facts pleaded – particularly Plaintiff's suicide attempt and the discussion of Anders's actions by Defendants Barcik, White and Budman – indicate that the alleged conduct had become so severe and permanent that Plaintiff should have realized that she had to assert her claims of discrimination or risk being barred by the statute of limitations. In the context of hostile work environment pleadings, the relevant conduct *must* be "sufficiently severe or pervasive" in order to state a claim. Morgan, 536 U.S. at 116. The repeated conduct at issue meets that standard, and on the face of the Complaint, appears sufficiently connected in subject matter to be considered together in relation to continuing violation and hostile workplace claims. See West, 45 F.3d at 755-56 (concluding that repeated harassment on the basis of race over a four-year period constituted a continuing violation in the context of a hostile work environment claim).

At the present motion to dismiss stage, there exists no basis in the Complaint for the Court to begin parsing discriminatory conduct beyond the "cumulative effect of individual acts" alleged. Morgan, 536 U.S. at 115. Rather, the key question here – for the hostile work environment claims and continuing violations doctrine – is whether the relevant conduct amounts to a "discrete discriminatory act," so as to constitute a separate instance of discrimination apart from even a related course of conduct. Id. at 110, 113. Discussion among supervisors of their employees' questionable conduct does not suffice as or indicate the existence of such a discrete

act. Nor does an attempted suicide as a result of allegedly discriminatory conduct demonstrate that such a discrete act transpired.. At the current procedural posture, both of these acts are far too subjective and indefinite for the Court to infer that a discrete discriminatory act must have occurred or that a duty to bring a legal challenge was triggered. Indeed, our present standard of review countenances the contrary inference. Fowler, 578 F.3d at 210-211. The Court, thus, will consider the repeated conduct from its very beginnings in the fall of 2006, and denies Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's allegations relating to conduct outside the 180 and 300-day statute of limitations periods applicable here.

### B. Pleading Standards

Defendants next argue that, under Rule 12(b)(6), Plaintiff failed to plead sufficient facts to support any of her claims or to give Defendants adequate notice, under Rule 8(a), of her claims. Citing the Rule 12(b)(6) standard of review addressed in Twombly, Defendants attack the Complaint for relying too greatly on conclusory statements lacking in "any reasonable amount of detail, circumstances, examples, dates, or similar information sufficient to put Defendants on notice of the basis of Plaintiff's claims." (Defs.' Mot. Dismiss 15-16.) Defendants do not, however, point to specific elements of the claims that are allegedly missing.

The Court finds that the Complaint contains sufficient factual matter to comply with the strictures of Rules 8(a) and 12(b)(6). While the Complaint includes certain conclusory statements, the Court readily disregards any legal conclusions contained therein and solely considers the well-pleaded facts in reaching the determination that the Complaint states a plausible claim for relief. See Fowler, 578 F.3d at 210-212 (concluding that plaintiff alleged sufficient facts to state a plausible claim (citing Iqbal, 129 S. Ct. at 1949-50)).

## V. CONCLUSION

In accordance with the rationale set forth above, the Court denies Defendants' Rule (12)(b)(6) Motion to Dismiss.

An appropriate order follows.